LA ROCCA BUILDERS, INC., Respondent, *v.* MAX SANDERS and Another, Appellants.

First Department, November 7, 1930.

*Jonas J. Shapiro* of counsel [*Henry Schantz*, attorney], for the appellants.

*Frank Roberson* of counsel [*Alley & Geer*, attorneys], for the respondent.

MARTIN, J. In an action to recover the amount due on a number of promissory notes the court at the end of the whole case dismissed the counterclaim and directed judgment for the plaintiff. The question upon this appeal arises out of the affirmative defense and counterclaim which allege a conversion of defendants' property by the plaintiff. There is no question of fact involved. The evidence is wholly uncontradicted and in many instances established by documentary proof.

The plaintiff was a tenant of a store and basement in the premises Nos. 571–581 Eighth avenue, borough of Manhattan. The plaintiff purchased for the store a soda fountain, tables and chairs, but apparently these fixtures had not been installed in the premises at the time the contract which is the basis of this action was executed. The contract was entered into on July 10, 1926, between the plaintiff and defendant Sanders for a sublease of the premises and a sale of the store fixtures. The consideration for the sublease, the soda fountain, tables and chairs was fixed at $10,000. This sum was payable $500 on the signing of the contract and the balance in one hundred and four weekly installments, the first to be paid on September 7, 1926. The installments were to be paid by notes maturing weekly and were to bear the signature of the defendant Millstone as a comaker with defendant Sanders. Fifty-five of the one hundred and four notes were paid, leaving a balance of forty-nine notes. The sum of $4,476.15 was due on the unpaid notes, the defendants having paid notes amounting to $5,023.85 and in addition the $500 on the signing of the contract. The defendants, therefore, paid over fifty per cent of the purchase price. The judgment which the plaintiff recovered in the court below is for the forty-nine unpaid notes, with interest, protest fees and costs, without any deduction or allowance whatsoever.

The counterclaim is for the conversion of the soda fountain,

tables and chairs, and also for additional personal property placed upon the premises by the defendants.

At the time the contract was signed the store was vacant. The parties contemplated that the premises were to be used as a confectionery, soda fountain and luncheonette store. The parties also contemplated that the soda fountain, chairs and tables which the plaintiff was selling to the defendants would not be sufficient to conduct such a business and that the buyer would have to install additional furniture, fixtures and movable equipment.

The agreement provided that " title to the aforesaid soda fountain, tables and chairs is to remain in the Seller *until completion of the store.*" This is unlike the usual reservation of title; there is no reservation until the purchase price is paid, but merely until the store is completed. There was a reservation of title however short the period may have been. The defendant Sanders testified that the store was completed after he had been doing business there for about six months.

In November, 1927, the defendant Sanders was still in possession of the premises. On November 25, 1927, the plaintiff instituted a dispossess proceeding upon the ground of non-payment of rent, and a warrant of dispossess was issued. On November 26, 1927, the marshal dispossessed defendant Sanders and the plaintiff acknowledged being put in possession of the premises. This was not the usual dispossess by putting tenant's property in the street; in this case the plaintiff apparently took possession of both the premises and the chattels. At all times the plaintiff treated the transaction as a conditional sale.

In December, 1927, the plaintiff sent to the defendant the following notice: " By virtue of a *conditional sale contract executed by La Rocca Builders, Inc., as vendor*, and Max Sanders as vendee, dated July 10, 1926, and upon which default has been made by the vendee, and which *property has been retaken* by the vendor pursuant to law, we will expose for sale at public auction on Wednesday, the 4th day of January, 1928," etc. (Italics ours.)

This notice was given as a compliance with section 79 of the Personal Property Law (as added by Laws of 1922, chap. 642, known as the Uniform Conditional Sales Act), which provides that in a case where, as here, fifty per cent of the purchase price has been paid, the seller shall sell the goods " at public auction " not more than thirty days after the retaking.

The so-called auction was held by an attorney then in the employ of the plaintiff's attorney, as " auctioneer," although he had never been licensed to act as an auctioneer. He never filed an auctioneer's bond as required by law; there was no sign or flag placed outside

the premises to indicate that there was a public auction. One bid was made of $100 on behalf of the plaintiff. The court failed to give the defendants credit in the judgment for this $100.

It having been established that the buyer under the conditional sales agreement paid over fifty per cent of the purchase price, it became necessary for the plaintiff in this action to dispose of this property in conformity with section 79 of the Uniform Conditional Sales Act. That plaintiff was aware of that fact is shown by the notice which he served on the defendant in December, 1927, stating that by virtue of the conditional sales agreement he would expose for sale at public auction on Wednesday, the 4th of January, 1928, the fixtures in question.

Section 80-e of the Uniform Conditional Sales Act, so far as here material, provides that if the seller fails to comply with sections 78, 79, 80-a and 80-c after the retaking of the goods, the buyer may recover from the seller his actual damages, if any, and in no event less than one-fourth of the sum of all payments which have been made under the contract, with interest. The appellant contends that the respondent failed to comply in several particulars with the provisions of the Uniform Conditional Sales Act.

The court held that in any event there was no evidence of a retaking by the seller under the conditional sales agreement. Such a contention is completely disposed of by the notice sent by the seller which states: " * * * and which property has been retaken by the vendor pursuant to law." There is written evidence, therefore, that the seller admitted the retaking and notified the buyer to that effect.

The law provides that where there is a retaking under a conditional sales agreement such as in this case now before the court, the goods must be disposed of at public auction. The seller must also give the buyer at least ten days' written notice of the sale, either personally or by registered mail directed to the buyer at his last-known place of business or residence. The seller shall also give notice of the sale by at least three notices posted in different public places within the filing district where the goods are to be sold, at least five days before the sale. If at the time of the retaking, $500 or more has been paid on the purchase price, the seller shall also give notice of the sale at least five days before the sale by publication in a newspaper published or having a general circulation within the filing district where the goods are to be sold.

It is clear from an examination of the record that the plaintiff assumed that the entire transaction came within the provisions of the Uniform Conditional Sales Act and that in order to enforce the claim it was necessary to comply with the provisions thereof. It is idle to

now argue that the Uniform Conditional Sales Act has nothing whatever to do with the case when all of the parties assumed that it was necessary to comply therewith in order to dispose of the property in question and foreclose the rights of the defendant Sanders. Many of the provisions of the Uniform Conditional Sales Act were not complied with and no attempt was made to show a compliance therewith upon the trial of this action. The effort to make it appear that plaintiff was conducting a *bona fide* sale is not very convincing.

The judgment should, therefore, be reversed and a new trial ordered, with costs to the appellants to abide the event.

DOWLING, P. J., MERRELL, O'MALLEY and SHERMAN, JJ., concur.

Judgment reversed and a new trial ordered, with costs to the appellants to abide the event.